JSU

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1532 | **DATE** | 6/12/2002 |
| **CASE TITLE** | Security Insurance Co. of Hartford vs. DHL Worldwide Express et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Memorandum Opinion and Order entered.  Plaintiff's Motion for Summary Judgment [#26] is hereby denied; Defendant's Cross-Motion for Summary Judgment [#25] is hereby granted. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 1 3 2002 | 41 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | IS | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/12/2002 | |
| | | | date mailed notice | |
| FT/*secy* | courtroom deputy's initials | | FT | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

United States District Court
Northern District of Illinois
Eastern Division

DOCKETED
JUN 1 3 2002

SECURITY INSURANCE COMPANY OF )
HARTFORD a/s/o MOTOROLA, INC. )
)
Plaintiff, )     No. 00 C 1532
)
vs. )
)     Magistrate Judge
)     Arlander Keys
)
DHL WORLDWIDE EXPRESS NV, AND )
DHL AIRWAYS, INC. )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Plaintiff's Motion for
Summary Judgment and Defendant's Cross-Motion for Summary
Judgment, pursuant to Federal Rule of Civil Procedure 56.
Plaintiff, Security Insurance Company of Hartford a/s/o Motorola,
Inc. ("Security"), sued Defendants, DHL Worldwide Express NV, and
DHL Airways, Inc. (collectively "DHL"), for breach of contract
and breach of bailment. For the reasons set forth below,
Plaintiff's Motion for Summary Judgment is Denied and Defendant's
Cross-Motion for Summary Judgment is Granted.

### Factual Background

On February 9, 1997, DHL entered into a Service Agreement
with Motorola, Inc. ("Motorola") to provide worldwide
transportation for a period of three years. Defendant's Motion
for Summary Judgment ["Def.'s MSJ"] Ex. A & 4, 6 & 12. Between

41

February of 1997 and June 1, 1998, DHL transported more than 130 shipments of cellular phones from Motorola facilities in Illinois to Cellular Express S.A. DE C.V. ("Cellular Express") in Mexico City, Mexico, without incident. Plaintiff's Statement of Uncontested Facts ["Pl.'s SUF"] ¶ 34.

On June 8, 1998, DHL was presented with a Power of Attorney executed by Cellular Express, purportedly granting CIETSA, a Mexican corporation, authority to act as Cellular Express' agent to clear Cellular Express shipments through customs in Mexico. This Power of Attorney purportedly authorized CIETSA to accept shipments from DHL on behalf of Cellular Express. Pl.'s SUF ¶ 36; Hernandez Dep., at 13.)

On September 8, 1998, DHL agreed to transport approximately 4,505 cellular telephones (901 pieces) from Motorola's facility in Libertyville, Illinois to Cellular Express in Mexico. Pl.'s Cmplt. ¶ 9. On September 18, 1998, DHL picked up the cellular telephones from Motorola for transport to Mexico City, dividing the telephones into two separate shipments. Pl.'s Cmplt. ¶¶ 10, 11. DHL transported the first shipment, which contained 837 pieces, to Mexico on September 22, 1998. This shipment is evidenced by air waybill number 9350603861. Def.'s MSJ Ex. D. The second shipment, containing 64 pieces, left the United States on September 23, 1998, and was marked as air waybill number

9350603894. Def.'s MSJ Ex. D. Both shipments arrived in Mexico City on September 24, 1998. Pl.'s Cmplt. ¶ 12.

When the shipments arrived in Mexico City, DHL released the goods to AAACESA, a bonded warehouse. Hernandez Dep., at 20. Once at the AAACESA warehouse, CIETSA received paperwork from DHL and claimed the shipment from AAACESA. Hernandez Dep., at 21-22. According to Motorola's theft investigation, CIETSA loaded the cellular telephones onto a truck on September 28, 1998, and the truck drove off the airport grounds. However, before CIETSA's truck reached Cellular Express, gunmen hijacked the truck and stole Motorola's cellular telephones. Def.'s MSJ Ex. J at 6.

Shortly thereafter, Motorola was notified about the theft, and promptly contacted Patricia Litowchak, an employee in Motorola's risk management and compliance department. Litowchak Dep., at 15. At the time Motorola contacted her, Ms. Litowchak was at home on maternity leave. Id. at 13. Ms. Litowchak explained to Steve Roback, Motorola's export supervisor, that Motorola should immediately send out an intent to file suit letter ("intent letter") to DHL, pursuant to the terms of the notice provision in Motorola's contract with DHL. Id. at 15.

Mr. Roback then asked Sofia Bradshaw to compose and fax the intent letter. Bradshaw Dep., at 20. Ms. Bradshaw did not typically perform such tasks, but had become accustomed to absorbing some of Ms. Litowchak's responsibilities during her

3

maternity leave. Ms. Bradshaw claims that, in response to such a request, she typically created, printed, and then faxed the letter in fairly short order. Bradshaw Dep., at 21-22. However, Ms. Bradshaw does not have any independent recollection of preparing or faxing the specific intent letter at issue in this case. Bradshaw Dep., at 31. Ms. Bradshaw acknowledged that, upon faxing an intent letter, it was her custom to attach the facsimile confirmation receipt or journal to the faxed letter, then forward the file, with the letter and facsimile receipt, to Mr. Roback. Bradshaw Dep., at 24-25.

DHL contends that it never received a copy of the intent letter in October of 1998, claiming instead that Motorola first notified DHL of its intent to file a claim on November 20 and/or 21, 1998[1]. DHL supervisor David Michalek states that Mr. Roback called him in late November of 1998 to inform DHL that Motorola sought to file a claim with regard to the stolen cellular phones. Mr. Michalek explained to Mr. Roback that the intent letter would be untimely, because Motorola's contract with DHL required Motorola to deliver any claim against DHL within 30 days of the acceptance date, which was no later than October 23, 1998. Mr. Michalek claims that Mr. Roback acknowledged this point, but explained that protocol nevertheless required Mr. Roback to fax

---

[1] For purposes of clarity, the Court will simply presume that DHL claims to have received Motorola's intent letter on November 20, 1998.

4

the intent letters to DHL[2].  Mr. Roback then faxed the letters to
Mr. Michalek, who signed the letters and faxed them back to
Motorola.

Motorola's contract with Cellular Express required Motorola
to insure the subject shipments until they reached Cellular
Express' facility in Mexico.  Motorola insured its shipments with
Security Insurance.  Because the shipments never reached Cellular
Express, Cellular Express has refused to pay Motorola for the
cellular phones.  Therefore, under the terms of its policy,
Security Insurance was required to and did pay Motorola in excess
of $1.7 million.  In accepting the payment, Motorola subrogated
its claims against DHL to Security Insurance.  On March 13, 2000,
Security Insurance filed suit against DHL, alleging breach of
contract and bailment.  The parties consented to proceed before
this Court on September 19, 2000.

During the course of discovery, Motorola produced the
original intent letter that it sent to DHL.  Although the letter
is dated October 23, 1998, Motorola was unable to produce any
facsimile confirmations or facsimile journals indicating that it
had actually faxed the intent letter to DHL on that date.
Conversely, DHL's copies of the intent letter bear facsimile
markings indicating that Motorola faxed the letter twice on

---

[2]  Motorola does not dispute this contention, but Mr. Roback
claims that he cannot recall having any specific conversations
with anyone at DHL about the fax or the shipments.

5

November 20, 1998, not on October 23, 1998, the date Motorola contends the letter was written. Bradshaw Dep., at 41; Def.'s MSJ Ex. N.

### Summary Judgment Standard

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all evidence in a light most favorable to the nonmoving party, and draw all inferences in that party's favor. *Mangren Research & Dev. Corp. v. National Chem. Co.*, 87 F.3d 937, 941 (7th Cir. 1996). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249-250; *Griffin v. Air Line Pilots Ass'n, Int'l*, 32 F.3d 1079, 1084 (7th Cir. 1994). In determining whether a genuine issue of material fact exists, the Court "must view the evidence presented through the prism of the substantive evidentiary burden." *Liberty Lobby*, 477 U.S. at 254.

The pendency of cross-motions for summary judgment does not alter the Court's analysis. *See United Transportation Union v. Ill. Central R.R.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998). The

Court evaluates each motion independently, shifting the burden and drawing inferences accordingly. *Id.*

## Discussion

In its Motion for Summary Judgment, Security Insurance contends that DHL deviated from the terms of the parties' written transportation agreement by releasing Motorola's goods to CIETSA, instead of delivering the shipments to Cellular Express' "door." Security Insurance argues that, under the deviation doctrine, a carrier may not limit its liability under the Warsaw Convention if it deviates from the terms of a contract for carriage, citing *Fireman's Fund Ins. Co. a/s/o Motorola, Inc. v. El Al et al.,* No. 99 C 3801 (N.D. Ill Jan. 12, 2001). Security Insurance asserts that such a deviation occurs when a carrier contracts to deliver goods "door to door," but fails to do so, citing *Fireman's Fund Ins. Co. a/s/o Motorola, Inc. v. Panalpina, Inc. et al.,* No. 00 C 2595 (N.D. Ill. Aug. 23, 2001).

In response, DHL argues that Security Insurance improperly relies upon a document not incorporated into, or otherwise referenced by, the parties' contract to require DHL to deliver Motorola's goods to Cellular Express' door. DHL notes that, in support of its deviation doctrine argument, Security Insurance relies upon DHL's Shipping Procedures to create an obligation for DHL personally to deliver the goods to Cellular express. DHL argues that the parties' Service Agreement, executed on February

7

9, 1997, states that it represents the entire agreement between the parties, and the Service Agreement does not obligate DHL to perform in the manner that Security Insurance suggests.

More importantly, DHL argues that summary judgment is warranted in its favor because, even if DHL deviated from the parties' contract (which DHL insists it did not), Motorola's failure to notify DHL of its claim within thirty days of DHL accepting Motorola's goods prevents Security Insurance from prevailing. The Service Agreement and its attachments directs Security Insurance to notify DHL, in writing, of its intent to file a claim within thirty days of acceptance of the goods. Because Security Insurance has not produced any evidence that Motorola notified DHL of its intent on or before October 23, 1998, DHL contends that it is entitled to summary judgment.

A review of the parties' Service Agreement supports DHL's assertion that this document represents the entire agreement between the parties, and that Security Insurance's attempt to obligate DHL under the terms of DHL's Shipping Procedures is without merit. Moreover, the Service Agreement and its attachments clearly state that the terms thereof supercede any contrary provisions. What remains to be resolved is whether Motorola complied with the Service Agreement's Notice Provision, by notifying DHL of its intent to file a claim within 30 days of DHL's acceptance of the goods.

Security Insurance attacks DHL's assertion that Motorola's
failure to comply with the Notice Provision is fatal to Security
Interest's Complaint on three grounds. First, Security Insurance
claims that the Warsaw Convention prohibits a carrier from
limiting its liability for a loss, and that DHL's Notice
Provision is, in essence, an impermissible restriction on loss.
Secondly, Security Insurance claims that DHL never triggered the
Security Agreement's Notice Provision because it failed to issue
Motorola an air waybill evidencing "acceptance." Finally,
Security Insurance claims that there is a genuine issue of
material fact regarding whether Motorola sent DHL its intent
letter by October 23, 1998, arguably within thirty days of
acceptance[3]. The Court will address each of Security Insurance's
contentions in turn.

## I. The Warsaw Convention Does Not Prohibit DHL From Enforcing the Service Agreement's Notice Provision.

Security Insurance claims that, under the Warsaw Convention,
DHL is precluded from setting a notice limit with regards to lost
goods. DHL counters that this proposition is faulty for two
reasons. Because the loss took place after the shipment had left
airport grounds, DHL argues, the Warsaw Convention does not
apply. DHL then asserts that, even if the Warsaw Convention does
apply, the Convention does not prohibit parties from negotiating

---

[3] Of course, October 23, 1998 would be 31 days after DHL
accepted a substantial majority of the goods for shipment.

9

and executing a contract with regard to critical items, including notice. *Butler's Shoe Corp. v. Pan American World Airways, Inc.*, 514 F.2d 1283, 1285 (5th Cir. 1975); *Hitachi Data Systems Corp. v. United Parcel Service, Inc.*, 76 F.3d 276, 279-280 (9th Cir. 1996).

Because the Court agrees that the Warsaw Convention does not prohibit parties from negotiating notice provisions, the Court finds that Security Insurance cannot rely upon the Convention's provisions to fend off summary judgment[4]. Even assuming, *arguendo,* that the Warsaw Convention applies to the loss of these goods, nothing in the Convention prevents parties from contracting critical terms like notice. Art. 1 *et seq.; Hitachi*

---

[4] Moreover, it is not at all clear that the Warsaw Convention applies in this case. The provisions of the Warsaw Convention apply when goods are lost or damaged during "carriage by air." Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, TS No. 876 (1934), *reprinted in* 49 U.S.C. § 1502 (2002) Art. 18(1). Section three of Article 18 indicates that carriage by land is excluded from the Convention. Art. 18(3). The Second Circuit has interpreted Article 18 to mean that the damage or loss must occur while in the air or while on airport grounds. *Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705, 707 (2nd Cir. 1990). There is a rebutable presumption that the loss or damage occurred during "carriage by air." Art. 18(3); *Jaycees Patou, Inc. v. Pier Air International, LTD.*, 714 F.Supp. 81, 83 (S.D.N.Y. 1989). In this case, DHL's evidence tends to rebut that presumption; Motorola's theft investigation concluded that the loss occurred when armed gunmen hijacked a truck somewhere between the Mexico City airport and Cellular Express premises. Def.'s MSJ Ex. J at 6. Thus, the loss did not occur during "carriage by air." If the loss did not occur during "carriage by air," then the provisions of the Warsaw Convention are inapplicable. *Victoria Sales* 917 F.2d at 707-708.

76 F.3d at 279-280. There are two primary provisions in the
Warsaw Convention that prohibit a carrier from attempting to
contractually limit its liability; specifically, Article 9 and
Article 23[5]. However, courts have consistently held that notice
provisions are not attempts to limit liability – even when the
application of such provisions achieves just such a result – and
are not prohibited by the Convention. *See Butler's Shoe*, 514 F.2d
at 1285 (while a notice provision "may operate to bar recovery,
we do not believe that it is properly considered a limitation on
liability within the intendment of the Convention."); *St. Paul
Ins. Co. v. Venezuelan Int'l Airways*, 807 F.2d 1543, 1549 (11th
Cir. 1987) ("In Warsaw Convention cases, limitations periods,
whether imposed by the treaty itself or by contract, have not
been held to be provisions limiting or excluding liability.")

Moreover, the Court finds that it is immaterial, for
purposes of this argument, whether Article 9, the more specific
provision relating to defective or missing air waybills, or
Article 23, the more general provision applying to any attempted
liability limitation by a carrier, would apply to this case.
Although Article 9 affords arguably broader protections when
triggered, the mere fact that a claimant has recourse under

---

[5] Article 9 applies when an airway bill is missing or
defective. Article 23 applies more broadly to prohibit any
attempt by a carrier to limit its liability.

Article 9 does not alter the conclusion that a notice provision is not a prohibited limitation of liability. *Onyeanusi v. Pan Am*, 952 F.2d 788, 794 (3rd Cir. 1992) ("Article 9...only excuses the monetary liability limitations, not the notification requirements."); *Hitachi*, 76 F.3d at 277-78 ("Article 9 and other references to provisions which 'exclude,' 'limit,' or 'tend to relieve the carrier of' liability reach only provisions such as Article 20 and 22, which limit damages recoverable against a carrier under the Convention or exclude it entirely in certain circumstances.")

This Court agrees that none of the Articles of the Warsaw Convention prohibit the making and enforcement of notice provisions contained in a contract. Having determined that the Notice Provision applies, the Court next turns to the question of when that thirty-day period began to run.

## II. DHL Accepted Motorola's Goods.

The Service Agreement's thirty-day Notice Provision was triggered by DHL's "acceptance" of the subject goods. Pl.'s Resp. to Def.'s MSJ at 6. Security Insurance correctly points out that, under the Warsaw Convention, in order for a carrier to trigger acceptance (and before a carrier is entitled to the Convention's protections) a correct air waybill must be issued. *Royal Insurance Co. v. DHL Worldwide Express*, No. 98 Civ. 3743 (RPP), 1999 WL 494118 (S.D.N.Y. July 13, 1999), *aff'd*, 205 F.3d

1324 (2nd Cir. 2000). DHL has not produced sufficient evidence that it issued Motorola a correct air waybill with regard to the shipments at issue in this case.

DHL concedes as much, but characterizes Security Insurance's argument as irrelevant. DHL emphasizes that it is not seeking to take advantage of the notice provisions within the Warsaw Convention, but is merely seeking to enforce the parties' Service Agreement. Because nothing in contract law limits "acceptance" to the issuance of a correct air waybill, DHL argues, DHL's failure to produce such evidence does not bar DHL from otherwise demonstrating that it accepted Motorola's goods, and that the thirty-day notice period was triggered. The Court agrees.

Carriers use air waybills to confirm various aspects of the goods the carrier has agreed to transport. *Denby v. Seaboard World Airlines, Inc.*, 575 F.Supp. 1134, 1136 (E.D.N.Y. 1983). According to the Warsaw Convention, a proper air waybill will contain the place and date of its execution; the place of departure and destination; the agreed stopping places; the name and address of the consignor; the name and address of the first carrier; the name and address of the consignee; nature of the goods; the number of packages; the weight and volume of the goods; the apparent conditions of the goods; the date and place of payment and person paying; the price of the goods; the amount of value declared; the number of parts of the air waybill; the

13

documents handed to the carrier to accompany the air waybill; the time fixed for the completion of the carriage and route to be followed; and a statement that the carriage is subject to the rules relating to liability established in the Warsaw Convention. Art. 8(a-q). In short, the air waybill confirms that the carrier has agreed to transport the goods, in the manner described on the air waybill, and has agreed to accept responsibility for the goods.

When Motorola turned over the cellular telephones to DHL, DHL generated labels, which to an untrained eye appear to be air waybills. The labels, later identified as thermolabels, contained much of the same information as required on a proper air waybill. However, thermolabels are distinct from air waybills, and merely document that an air waybill has been issued -- it is not a copy of the air waybill itself. Parsons Dep., at 13. Such a distinction might be fatal if this case were to be decided under the notice provisions within the Warsaw Convention. *Cf. Onyeanusi*, 952 F.2d at 794; *Hitachi* 76 F.3d at 279-280 (notice provisions within Warsaw Convention for damaged goods upheld despite incorrect air waybill).

While the Warsaw Convention may require strict adherence, common law does not demand such perfection with regard to establishing the date of acceptance. DHL issued two thermolabels for the two separate shipments of cellular telephones. Def.'s

14

MSJ Ex. E.  The thermolabels contained the conditions of carriage; number of pieces; weight; who the shipper was; who the consignee was; a description of the goods; the value for customs and more.  Parsons Dep., at 13; Def.'s MSJ Ex. E.  These thermolabels even used the word "air waybill" on them and identified the air waybill number.  Def.'s MSJ Ex. E.  Although this information may have been insufficient under the Convention, the thermolabels do evidence DHL's acceptance of the goods from Motorola for the purpose of transporting them to Mexico City.

The Court concludes that the date of "acceptance" is the date listed on the thermolabels, which is September 22, 1998 for the shipment containing 837 pieces, and September 23, 1998 for the shipment containing 64 pieces.  Having determined that the notice provision was applicable and that DHL accepted the goods on September 22 and 23, 1998, the Court must now determine whether there is a genuine issue of material fact regarding whether Motorola met the thirty-day notice requirement.

**III. Security Insurance's Evidence Does Not Create a Genuine Issue Of Fact As To Whether Motorola Met the Notice Requirement.**

Security Insurance has introduced very little evidence that Motorola mailed, faxed, or otherwise communicated written notice of its intent to file a claim to DHL within the prescribed time period.  Having established that DHL accepted the first shipment on September 22nd, and the second shipment on September 23rd, the Notice Provision required Motorola to submit its intent letters

15

to DHL by October 22 & 23, 1998, respectively. *See* Def.'s MSJ Ex. A. Security Insurance relies exclusively on the reliability of the typed date on the letter written by Sofia Bradshaw, and Ms. Bradshaw's claims that, if she were asked to prepare and fax an intent to sue letter, she would have completed it immediately. Bradshaw Dep., at 21-22.

Clearly, this evidence is insufficient to warrant summary judgment in favor of Security Insurance on the issue of notice; drawing every inference in DHL's favor, a trier of fact could reasonably conclude that Security Insurance failed to notify DHL in a timely manner. The question then becomes whether, viewing all of the evidence in a light most favorable to Security Insurance, there is a genuine issue of fact as to whether Security Insurance faxed DHL the intent letter on October 23, 1998.

Security Insurance's evidence supporting its assertion that the letter was faxed on October 23rd is underwhelming. Although the intent letter bears that date, and Ms. Bradshaw testified at her deposition that it was her practice to follow through on assignments, she admitted that she could not recall preparing or faxing the DHL intent letter. In addition, Security Insurance has not produced a copy of a facsimile receipt or journal documenting that the letter was faxed on October 23rd, even though Ms. Bradshaw testified that she customarily attached such

16

documents to the intent letters that she faxed. Up until approximately August of 1998, Ms. Bradshaw had not been responsible for preparing and faxing intent letters; notifying carriers of claims was Ms. Litowchak's responsibility, but she was on maternity leave from August of 1998 until the third week of November of that same year. It bears noting that the facsimile receipt date imprinted on DHL's copy of the intent letter coincides almost exactly with Ms. Litowchak's return to work from maternity leave.

Conversely, DHL has presented substantial evidence that Security Insurance did not fax the letter to DHL on or before October 23, 1998. In support of its version of events, DHL has produced its copies of the intent letter, which bear markings documenting that the letter was faxed on November 20, 1998. If this were all the evidence DHL had presented, the Court would be inclined to deny DHL's motion for summary judgment; drawing all reasonable inferences in Security Insurance's favor, this evidence indicates only that Motorola may have lost the facsimile receipt and journal documenting its transmission of the letter on October 23rd, and that Motorola subsequently faxed the letter again on November 20, 1998[6].

---

[6] Of course, Security Insurance does not explain why, if Motorola had timely faxed the intent letter in the first place, Motorola would fax the letter again on November 20, 1998.

17

But DHL goes further, and offers unrebutted testimony that
Motorola's management acknowledged that the intent letter was
untimely.  DHL supervisor David Michalek testified that
Motorola's export supervisor, Steve Roback, contacted him about
the intent letter on approximately November 20, 1998.  Mr.
Michalek informed Mr. Roback that the letter was already
untimely, and Mr. Roback conceded this deficiency[7].  When asked
about any conversations with Mr. Michalek concerning the intent
letter in his deposition (which was subsequent to Mr. Michalek's
deposition), Mr. Roback merely stated that he could not recall
whether he had such a conversation with Mr. Michalek, but he did
not deny making the statement.

If Security Insurance had evidence indicating that the letter
was, in fact, faxed on October 23rd, it was obligated to produce
this evidence in support and in defense of summary judgment.
*Cassie Nationale de Credit Agricole v. CBI Industries, Inc.*, 90
F.3d 1264, 1270 (7th Cir. 1996)( "A party seeking to defeat a
motion for summary judgment is required to wheel out all its
artillery to defeat it.")  Given the evidence suggesting that the
letter was not faxed until after the thirty-day period had run,
the Court finds that Ms. Bradshaw's testimony as to her general
practices and the fact that the letter may have been prepared on

---

[7]    The Court notes that admissions against interest made by
a party-opponent are not hearsay under Rule 801(d) of the Federal
Rules of Evidence.

October 23rd is insufficient to create a genuine issue of material fact. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts."); *Anderson et al. v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence from which the jury could reasonably find for the [non-moving party.]")

The Court finds that there is no genuine issue of fact concerning whether DHL received notice within the prescribed thirty-day period. Therefore, this Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## CONCLUSION

DHL has persuasively demonstrated that Motorola was obligated to notify DHL of its intent to sue within 30 days of DHL's acceptance of Motorola's goods, and that Motorola failed to satisfy this obligation. Therefore, under the terms of the parties' Service Agreement, Motorola and Security Insurance, its subrogee, are barred from recovering for any loss against DHL.

**IT IS HEREBY ORDERED** that Security Insurance's Motion for Summary Judgement be, and the same hereby is, **DENIED**.

**IT IS FURTHER ORDERED** that DHL's Motion for Summary Judgment be, and the same hereby is, **GRANTED**.

Dated: June 12, 2002      E N T E R:

ARLANDER KEYS
United States Magistrate Judge